IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| TABITHA RUMFELT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 6:25cv-3384 |
| | ) | |
| DALLAS COUNTY, MISSOURI, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**<u>PLAINTIFF'S MOTION FOR RELIEF FROM PROTECTIVE ORDER AND SUGGESTIONS IN SUPPORT</u>**

COMES NOW, Plaintiff, Tabitha Rumfelt, by and through her attorneys of record, and for Plaintiff's Motion for Relief from Protective Order and Suggestions in Support, respectfully states to the Court as follows:

A Protective Order was issued by the Court in this matter on April 9, 2026 (Doc. 23). Under the Protective Order, Plaintiff believes that copies of the transcripts of the depositions of Defendant Carriger, Sheriff Scott Rice and exhibits used during those depositions could be shared with Trooper Wells with the Missouri Highway Patrol, and other Troopers who conducted an investigation as to some of the allegations in this action. Further, Trooper Wells has indicated he would and will complete a probable cause statement as to the conduct of Carriger as alleged in this case. In addition, Mr. Barker, the Prosecutor in Dallas County, Missouri, has indicated that he would like to have a copy of the transcripts.

In deference to the Court and it's entry of a Protective Order, Plaintiff requests a ruling that the providing of transcripts of and exhibits from the depositions of Defendant Carriger and Scott Rice is authorized within this Court's intention as to the Protective Order, or in the alternative, for an amendment of the Protective Order allowing Plaintiff to share discovery in this matter with law

enforcement to assess and pursue potential criminal charges in a timely manner and not be prejudiced by time or any potential destruction or staleness of evidence of potential criminal conduct. Plaintiff wants to share the deposition transcripts and exhibits in this case with representatives of the Missouri Highway Patrol (who are witnesses with first hand knowledge as related to their limited investigation of Defendant Carriger) and to Mr. Barker, the Dallas County Prosecutor.

There is a concern that not providing this information to the prosecutor at this time will result in destruction or staleness of evidence, loss of contact with witnesses and otherwise potentially having a negative effect on any criminal charge which may or may not be filed against Carriger. The transcripts of and exhibits from the depositions of Carriger and Rice would provide information upon which a decision could be based as to whether a charge is filed. Respectfully, it is believed that for this and other reasons related to judicial integrity, a prosecutor's role in pursuing charges, and the protection of potential victims or other victims, that the office of the prosecutor for Dallas County, Missouri be allowed to review the transcript and evidence in this case. Otherwise, pursuit of a claim, if it exists, may be prejudiced.

The courts uniformly recognize the obvious, that the elements and evidence to prove cases as before this Court by necessity may be proven by circumstantial evidence, as direct evidence is rare - i.e., as here, defendants such as Carriger are not expected to admit to the elements of a criminal misconduct of "sexual contact" while Plaintiff was an inmate, nor after her release (see Section 566.145 RSMo). Carriger denies having sexual contact with Plaintiff while she was an inmate. However, Carriger testified to admissions of motive and opportunity of sexual contact while Plaintiff was an inmate, gave compelling evidence of contact after Plaintiff's release

consistent with sexual contact while she was an inmate and after her release, and other evidence proving Plaintiff's claims of sexual contact while Plaintiff was an inmate, and after her release.

Carriger admits motive. Carriger admitted to motive during the time period at issue for a jury to determine his sexual conduct in the instant case. Specifically, during the relevant time period, Carriger felt like a failure in his career and his position with the Dallas County Sheriff's Department. (Carriger Page 66:18 to 66:21). Carriger felt like he had failed to advance. (Carriger, Pages 66:24 to 67:1) While Carriger felt this way about himself and his career, Carriger was resentful of his wife. (Carriger, Page 66:22 to 66:23) He was resentful of his wife's success, she made more money and she had progressed in her vocation. (Carriger, Pages 64:22 to 65:14) During the time period as to which the jury will make a decision as to his conduct, Carriger had not had sex with his wife for two years. (Carriger, Pages 66:9 to 66;14; 66:24 to 67:1) Carriger liked sex and how it made him feel during the time Plaintiff was in jail. (Carriger, Pages 67:9 to 68:16) Carriger liked sex and how it made him feel when he sent videos to Plaintiff of himself masturbating. (Carriger, Pages 67:14 – 67:18) Carriger liked how it made him feel when he sent pictures to Plaintiff of his penis. (Carriger, Pages 67:19 – 67:22) Carriger liked how it made him feel and sex when he was groped and flirted with Plaintiff in his patrol car. (Carriger, Pages 67:21 – 67:24)

Carriger had had sex with a co-employee because it wasn't happening at home. (Carriger, Page 67:25 – 68:16) As with Plaintiff, Carriger had sex on a dirt road and sent photos and videos of sexting. (Carriger, Page 60:22 – 61:2; Page 61:8 – 61:10). Carriger had sex outside of marriage on other occasions, consistent with the sexual contact in and after Plaintiff was released from jail. Carriger sent videos, pictures and met the co-employee on a dirt road for sexual relations as he did with Plaintiff. (Carriger, Pages 59:25 to 60:15: Pages 60:22 to 61:2: 61:8 to 61:10)

Carriger had sexual relations with another co-employee when he was employed in Jasper County. (Carriger, Pages 61:11 – 62:18) Carriger agreed that his having had sexual relations with other women, his being resentful of his wife, feeling he was a failure and his not having had sex with his wife over a two year period could look like motive for him to have had sexual contact with Plaintiff while she was an inmate. (Carriger, Page 156:9 to 156:23) In sum, the evidence is clear and Carriger admits – he had motive.

Carriger admits opportunity. Carriger admitted that he had the opportunity to have sex with Plaintiff while she was in jail. Carriger admitted that he visited the jail when Plaintiff was an inmate and had the opportunity to get Plaintiff alone with him in a room. (Carriger, Pages 60:22 to 61:2) Carriger had the opportunity to be alone with Plaintiff while she was in jail. (Carriger, Pages 56:18 to 56:24) Further, as Sheriff Rice testified, Plaintiff was to do what Carriger told her to do while she was an inmate, or there could be consequences. (Rice, Pages 73:8 to 75:17: Page 88:19 to 88:23)

Evidence was obtained of the obvious – that being Carriger was in a position of authority, a superior position, while Plaintiff was in an inferior subordinate position as relevant to the contact between the parties – circumstantial evidence relevant to the sexual contact of Carriger with Plaintiff. Carriger knew he was in a position of authority, especially compared to Plaintiff. Carriger had the power and authority of being law enforcement. (Carriger, Pages 44:24 to 45:20) Plaintiff was to do what Carriger told her to do while she was an inmate, or there could be consequences. (Rice, Pages 73:8 to 75:17: Page 88:19 to 88:23) Carriger believed he would be more credible than Plaintiff if it was word versus word to deny misconduct. (Carriger, Pages 46:20 to 47:8)

Carriger had investigated claims of sexual misconduct where the male was in a superior position and the female a subordinate position. (Carriger, Page 56:18 to 56:24)

Carriger failed to act on knowledge that Plaintiff may have an arrest warrant (which she did), circumstantial evidence and conduct consistent with his engaging in wrongful conduct. Carriger did not deny that Plaintiff had expressed she was scared because of an outstanding arrest warrant. (Carriger, Page 106:9 to 106:12) Carriger admits he specifically discussed warrants of Plaintiff with her and knew Plaintiff was concerned about an outstanding warrant. (Carriger, Pages 42:12 to 43:7) Carriger understood that a warrant meant a judge had issued an Order and he was to act upon it, search and arrest. (Carriger, Pages 69:20 to 71:7) Carriger was supposed to act upon the information that Plaintiff may have an arrest warrant. (Carriger, Page 71:3 – 71:8) Despite this knowledge and obligation to act, Carriger did nothing to determine and arrest Plaintiff. (Carriger, Pages 42:12 to 43:7)

Carriger engaged in sexual contact after Plaintiff left the jail (videos, photos and personal), circumstantial evidence and conduct consistent with Carriger having engaged in sexual contact while Plaintiff was an inmate. After Plaintiff was released from jail, Carriger sent multiple videos to Plaintiff of himself masturbating. (Carriger, Page 28:10 to 28:18) Incredulously, Carriger claims there was nothing sexual about his sending the videos. (Carriger, Page 27:5 to 27:11) Carriger sent photos of his private area to Plaintiff. (Carriger, Pages 28:22 to 29:1) Carriger again incredulously claiming this was not sexual. Carriger used his work phone to send the multiple videos and photos, knowing it violated Dallas County Sheriff's policy. (Carriger, Pages 30:4 to 31:6) Carriger asked Plaintiff to send photos and videos of herself and she "complied." (Carriger, Pages 105:24 to 106:5)

Carriger admits to knowingly violating multiple provisions of the General Orders and policies of the Dallas County Sheriff's Office after Plaintiff was released from jail, sending videos, photos and his use of his patrol vehicle to meet with Plaintiff. (Carriger, Pages 33:7 to 37:25) – conduct consistent with Carriger violating policies by sexual contact with Plaintiff while she was an inmate. As Sheriff Rice testified, Carriger engaging in such conduct after Plaintiff's release is evidence of a "very strong probability" that Carriger engaged in sexual conduct while Plaintiff was an inmate. (Rice, Pages 43:24 to 44:15: Pages 41:23 to 42:9)

Carriger admitted to the Highway Patrol that he had sexual relations with Plaintiff. However, Carriger claimed it would be inaccurate that he had sexual relations with Plaintiff – calling himself a liar. (Carriger, Pages 10:18 to 11:25)

Carriger intentionally took off his body cam when he met Plaintiff on a dirt road in his patrol car. (Carriger, Page 76:6 to 76:24)

Carriger admitted to groping, being groped, kissing and being hard but denied it was "sexual," instead incredulously characterizing it as "flirting." (Carriger, Page 22:10 to 22:24: Page 64:18 to 64:21)

Carriger engaged in wrongful conduct, violated multiple policies of the Dallas County Sheriff and did so believing that he would be believed and not Plaintiff. (Carriger, Page 94:9 to 94:22) As Carriger conceded, he "does not know" why he his denial of sexual contact in jail would be believed when he admits to knowingly violating multiple policies of the Dallas County Sheriff's Office and sexual relations after Plaintiff was released from jail. (Carriger, Pages 48:19 to 49:2) Even Carriger understood that his having sexual relations, sending videos, photos and what occurred in his patrol car after Plaintiff was released was evidence supporting his having had sex with Plaintiff while she was an inmate. (Carriger, Page 82:9 to 82:22)

Carriger got rid of his personal cell phone on which would have his communications and potential videos and photos evidence in this case before he met with the Highway Patrol. (Carriger, Pages 79:19 to 80:7) He got rid of the phone before it could be inspected by the Highway Patrol. (Carriger, Pages 79:19 to 80:7)

Per policy, Carriger was required to self-report his multiple violations of policy. Carriger, Pages 36:23 to 37:25) Carriger failed to self-report. Carriger did not tell Sheriff Rice about his multiple videos, photos and meeting with Plaintiff using his patrol vehicle, because "he did not want him to know." (Carriger, Page 82:9 to 82:22) Carriger went even farther to hide his conduct, telling Sheriff Rice that Plaintiff was a confidential informant, representing that she was so credible that she could be identified in probable cause statement, to a court and by statute as a "confidential informant." (Carriger, Page 54:8 to 54:17: Page 54:8 to 54:17: Pages 56:7 to 58:3: Pages 58:17 to 60:13)

WHEREFORE, Plaintiff prays the Court for an Order providing the transcripts of and exhibits from the depositions of Defendant Carriger and Scott Rice, as authorized by the Protective Order entered herein, or in the alternative, for an amendment of the Protective Order allowing Plaintiff to share discovery in this matter with law enforcement to assess and pursue potential criminal charges against Defendant Carriger, and for such other and further relief as the Court deems just and proper.

TUCK, EDDY & ASSOCIATES, P.C.

____/s/Jacob G. Eddy______________
Jacob G. Eddy, MO Bar No. 72272
4650 S. National Ave., Suite D-4
Springfield, MO 65810
Telephone: (417) 884-6400
eddy@tuckeddylaw.com

*Attorney for Plaintiff*

*/s/Jay Kirksey*

Jerry M. (Jay) Kirksey
Missouri Bar No. 38643
**Kirksey Law Firm, LLC**
711 S. Albany Avenue
Bolivar, Missouri 65613-2619
Telephone 417.326.4529
Facsimile 417.326.8531
jmkirksey@kirkseylawfirm.com

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of August, 2026, the foregoing was filed using the court's ECF filing system which generated a notification sent via email to the following attorneys of record:

Damon S. Phillips
Keck & Phillips, LLC
damon@kpwlawfirm.com
*Attorney for Defendant Dallas County, Missouri*

Ryan Bertels
Schreimann, Rackers & Francka, LLC
rb@srfblaw.com
*Attorney for Defendant Chris Carriger*

*/s/Jacob G. Eddy*